UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DIMITRI BERNARD ROBINSON,

      Petitioner,

                                     Case No. 2:20-cv-12083

v.                                Honorable Linda V. Parker

GREGORY SKIPPER,

      Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS

Petitioner Dimitri Bernard Robinson ("Petitioner"), confined at the Muskegon Correctional Facility in Muskegon, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his pro se application, Petitioner challenges the following convictions: first-degree premeditated murder, Mich. Comp. Laws § 750.316(1)(a); second-degree home invasion, Mich. Comp. Laws § 750.110a(3); larceny in a building, Mich. Comp. Laws § 750.356; and possession of a firearm in the commission of a felony, Mich. Comp. Laws § 750.227b. For the reasons that follow, the Court is denying the petition for a writ of habeas corpus.

1

# I.  Background

Petitioner was convicted by a jury in the Wayne County Circuit Court.  The Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals when affirming Petitioner's conviction:

> In the years before the relevant events in this case, defendant was in a dating relationship with Marsha Williams. They had two children together. After that relationship ended, Williams began dating the [murder] victim. On or around May 1, 2016, defendant attempted to force his way inside Williams's house to see his children, but the victim prevented defendant from doing so. Later, on May 17, 2016, defendant confronted Williams at the children's school and wanted to see their children. Williams refused, and defendant grabbed Williams's arm and twisted it. That evening, when Williams and the children arrived home, Williams saw that someone had broken into their home through her bedroom window. There was blood in several places throughout the home, multiple items were missing, and Williams noticed a plastic bag with blood on it outside her bedroom window. When Williams confronted defendant about the break-in, he denied any involvement.
>
> The next day, on May 18, 2016, defendant sent Williams a photograph of a cut on his arm, which defendant attributed to an injury he incurred when someone robbed him. Williams did not believe defendant and called the police. That same day, an officer came to Williams's house, observed the scene, and took the plastic bag into evidence for forensic analysis.
>
> On May 25, 2016, the victim changed his cellphone number because defendant called him multiple times. The next day, after the victim had changed his number, defendant somehow discovered the victim's new number and texted the victim that he was going to kill him. On May 27, 2016, the victim picked Williams's children up from school at 3:45 p.m. and brought them back to Williams's house. At 4:15 p.m., the victim and Williams's son rode bicycles to the victim's father's home, which was roughly four blocks away. Later, while the

victim and Williams's son were returning to Williams's home, a man wearing a mask jumped out of some bushes and shot the victim.

Officers that responded to the scene found four bullet casings. Detective Lieutenant Bradley Cox, one of the officers that responded to the scene, spoke with Williams, who gave the detective defendant's name as a possible suspect. Cox went back to the police station to search the database for defendant. At or around 7:45 p.m. that day, defendant called Cox at the police station to ask why the police were looking for him. According to Cox, there was no reason why defendant would have known that police were looking for him. Cox told defendant that defendant was a person of interest in a crime—but did not specify what the crime was—and that he wished to speak with defendant. Defendant told Cox that he would call back later, and did so twice that evening. During each call, defendant declined Cox's invitation to come to the police station for questioning. At the end of the third and final call, defendant told Cox that he would get back to him because "[h]e was going to seek a lawyer."

According to Cox, because defendant refused to come to the police station, police were forced to search for him. Cox used the number that defendant called him from to get a court order to ping defendant's cellphone. This allowed Cox to trace defendant's real-time location. Cox gave defendant's phone carrier defendant's number, and the phone carrier told Cox that defendant was near 19400 Beland Street in Detroit, Michigan.

Officers went to that address and saw defendant walking outside. The officers verbally identified defendant and then detained him while they awaited a warrant to search 19400 Beland Street. After obtaining a warrant, the officers searched the home and found a piece of mail addressed to defendant—establishing his residency—and a loaded 9mm handgun. Forensics determined that the casings recovered at the scene of the shooting were fired from the 9mm handgun officers recovered at defendant's home.

Cox arrived at 19400 Beland Street while officers were securing the house before the search. Cox approached defendant, and defendant asked Cox if he was the officer defendant spoke with earlier. Cox said that he was, but advised defendant to "seek a

lawyer." According to Cox, defendant responded that he wanted to speak with Cox and clear things up. Cox transported defendant to the police station, where he advised defendant of his *Miranda* rights. Defendant eventually confessed to shooting the victim.

Before trial, defendant moved to suppress his statements to police, claiming that he invoked his right to counsel when talking to Cox on the phone, and so the interrogation of defendant without counsel violated defendant's Fifth Amendment rights. After a hearing on the motion—during which Cox and other detectives testified about the events surrounding defendant's contact with police, defendant's arrest, and defendant's interrogation—the trial court denied defendant's motion because defendant was not in custody when he requested counsel. Defendant was eventually convicted as previously stated, and this appeal followed.

*People v. Robinson*, Nos. 337755, 337928, 2018 WL 6579355, at *1-2 (Mich. Ct. App. Dec. 13, 2018), *leave denied* 925 N.W.2d 874 (Mich. 2019), *cert. denied* 140 S. Ct. 529 (2019), *reh'g denied* 140 S. Ct. 1252 (2020). These facts are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009).

Petitioner seeks habeas relief on the following grounds:

I. [His] Sixth Amendment right to effective assistance of counsel was violated when trial counsel failed to move to suppress the fruits of evidence obtained in violation of the Fourth Amendment, as the police use of a cell phone simulator or other devise to locate his phone was an invalid warrantless search.

II. [He] was denied his Sixth Amendment right to the effective assistance of counsel where his trial counsel failed to alternatively move to suppress his custodial statement and the evidence of the handgun that were obtained as fruits of an impermissible investigatory arrest.

4

III.  The trial court erred when it found [that Petitioner] waived his right to counsel and right to remain silent after the police reinitiated contact with Mr. Robinson subsequent to him informing Det. Cox that he needed to speak to an attorney before answering any questions.

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death

Penalty Act of 1996, imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court decision is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case."  *Id.* at 409.

A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103. A habeas petitioner should be denied relief as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *See Woods v. Etherton,* 136 S. Ct. 1149, 1152 (2016).

### III. Discussion

#### A. Petitioner's ineffective assistance of counsel claims (Claims I and II)

Petitioner claims he was denied the effective assistance of counsel because his trial attorney failed to move to suppress evidence on the ground that Petitioner's arrest and the seizure of certain evidence violated the Fourth Amendment.

6

To show the denial of the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two-prong test.  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney "was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In so doing, the defendant must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]"  *Id*.  In other words, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."  *Id.* at 689 (internal quotation marks and citation omitted).

"Second, the defendant must show that [counsel's] deficient performance prejudiced the defense."  *Id*. at 687.  To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id*. at 694. "*Strickland*'s test for prejudice is a demanding one.  'The likelihood of a different result must be substantial, not just conceivable.'"  *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011) (quoting *Harrington*, 562 U.S. at 112).  The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the State, to show a reasonable

7

probability that the result of the proceeding would have been different, but for

counsel's allegedly deficient performance.  *See Wong v. Belmontes*, 558 U.S. 15,

27 (2009).

Where a defendant's principal claim of ineffectiveness is counsel's failure to

litigate a Fourth Amendment claim, to prove prejudice, the defendant must show

that his Fourth Amendment claim is meritorious and that there is a reasonable

probability that the verdict would have been different absent the excludable

evidence.  *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986).

In his first claim, Petitioner argues that the police violated the Fourth

Amendment by pinging his cellphone to obtain his location without first obtaining

a search warrant.  Petitioner argues that counsel was ineffective for not raising this

argument at trial.  The Michigan Court of Appeals rejected the claim, reasoning:

> It is not settled law, however, that pinging a cellphone for a
> suspect's real-time location constitutes a search within the meaning of
> the Fourth Amendment. Indeed, defendant concedes as much on
> appeal.  Defense counsel's performance cannot be deemed deficient
> for failing to advance a novel legal argument.
>
> Given that there is no binding precedent to support defendant's
> argument that his Fourth Amendment rights were violated when
> police found defendant's location by pinging his cellphone, defense
> counsel's failure to object on this ground cannot be considered
> ineffective assistance of counsel. And because there is no caselaw to
> establish that defendant's assertion—that pinging his cellphone was a
> search within the meaning of the Fourth Amendment—has merit,
> defendant cannot establish that he was prejudiced by defense
> counsel's failure to raise the argument.

*Robinson*, 2018 WL 6579355, at *4 (internal quotation marks, citations and footnote omitted).  In a footnote, the Michigan Court of Appeals added:

> We recognize that recently, in *Carpenter v. United States*, . . . 138 S. Ct. 2206, 2217-2219 . . . (2018), the United States Supreme Court ruled that the police must obtain a search warrant supported by probable cause before obtaining a lengthy location history based on a suspect's cellphone location. But the *Carpenter* Court expressly refused to address "matters not before" it, including "real-time [cell-site location information]," *id.* at 2220, which is the type of alleged search at issue here.

*Robinson*, 2018 WL 6579355, at *4 n. 3.  The State court's decision was neither contrary to nor an unreasonable application of clearly established law, precluding relief.

In *Carpenter*, the Supreme Court did hold that law enforcement must obtain a search warrant that is supported by probable cause to obtain a lengthy history of a suspect's whereabouts based on his cellphone location.  138 S. Ct. at 2217-19. However, regarding real time cell location information like that obtained by the police to locate Petitioner at his residence, the Supreme Court stated:

> Our decision today is a narrow one. We do not express a view on matters not before us: real-time CSLI [cell-site location information] or "tower dumps" (a download of information on all the devices that connected to a particular cell site during a particular interval). We do not disturb the application of *Smith* and *Miller* or call into question conventional surveillance techniques and tools, such as security cameras. Nor do we address other business records that might incidentally reveal location information.

9

*Id*. at 2220.  Other decisions prior to the June 22, 2018 decision in *Carpenter* concluded that police do not violate the Fourth Amendment by failing to obtain a search warrant before seeking real time cell phone location information.  *See United States v. Riley*, 858 F.3d 1012, 1013, 1018 (6th Cir. 2017) (holding that police officers did not conduct a Fourth Amendment search when tracking real-time GPS coordinates of the defendant's cell phone for seven hours on the date of his arrest; tracking revealed only that the defendant had traveled to motel, not which motel room the defendant was in at time of tracking, and tracking revealed no more about the defendant's whereabouts than what the defendant exposed to public view by traveling to motel along public thoroughfares).

Given that the Supreme Court has yet to hold that police are required to obtain a search warrant before attempting to ascertain an individual's current location through real-time cell phone information, the State court's conclusion that the pinging of Petitioner's cell phone did not violate the Fourth Amendment was not unreasonable.  Relatedly, the State court's conclusion that trial counsel cannot be deemed ineffective for failing to advance a novel theory, not supported by established legal theory, was not unreasonable.  *See, e.g., United States v. Burgess*, 142 F. App'x 232, 240 (6th Cir. 2005) (holding that "trial counsel cannot be deemed [constitutionally] ineffective for failing to anticipate [a later Supreme Court ruling]"); *see also New v. United States*, 652 F.3d 949, 952 (8th Cir. 2011)

(quoting *Strickland*, 466 U.S. at 690) ("A failure to raise arguments that require the resolution of unsettled legal questions generally does not render a lawyer's services 'outside the wide range of professionally competent assistance' sufficient to satisfy the Sixth Amendment."); *Alexander v. Smith*, 311 F. App'x 875, 887 (6th Cir. 2009) (concluding that the "[f]ailure of . . . trial and appellate counsel to present a novel legal argument when the caselaw is ambiguous does not constitute ineffective assistance").  In fact, because *Carpenter* was not decided until over one year after Petitioner was convicted in 2017, trial counsel was not ineffective for failing to anticipate a rule of law yet to be articulated by the governing courts. *O'Neil v. United States*, 966 F.3d 764, 774 (8th Cir. 2020), *cert. denied*, 141 S. Ct. 1419 (2021) (citing *Basham v. United States*, 811 F.3d 1026, 1029 (8th Cir. 2016)). Notably, as discussed above, the rule of law subsequently announced did not render the conduct at issue unlawful.

In his second claim, Petitioner argues that counsel was ineffective for failing to challenge the legality of his arrest.  Although the police purportedly arrested Petitioner because he had outstanding traffic warrants, Petitioner claims that police used this as a pretext to investigate him for the murder.  The Michigan Court of Appeals rejected this claim, reasoning:

> In support of his argument, defendant relies on *People v. Martin*, 94 Mich. App. 649, 652-653, 290 N.W.2d 48 (1980), where this Court ruled that, despite that officers could have properly arrested the defendant for assaulting one of the officers, the officers did not

11

have probable cause to arrest the defendant because the officers said that they arrested the defendant "for 'investigation of murder,'" which is not a crime.  Here, unlike in *Martin*, the officers that arrested defendant never stated that they arrested him to investigate the murder; the only evidence in the record is that officers arrested defendant because he had several traffic warrants. Defendant "has the burden of establishing the factual predicate for his claim," *People v. Hoag*, 460 Mich. 1, 6, 594 N.W.2d 57 (1999), and without some evidence that the officers arrested defendant as a pretext to investigate the murder, defendant failed to establish the factual basis for this ineffective assistance claim. Because defendant does not dispute that it was proper for officers to arrest defendant based on his outstanding traffic warrants, he cannot show that his arrest was illegal. And defense counsel cannot be deemed ineffective for not raising this "meritless or futile" objection. *People v. Putman*, 309 Mich. App. 240, 245, 870 N.W.2d 593 (2015).

*Robinson*, 2018 WL 6579355, at *5.  The State court's decision was neither contrary to nor an unreasonable application of clearly established federal law, nor was it based on an unreasonable determination of the facts.

The United States Supreme Court has indicated its "unwillingness to entertain Fourth Amendment challenges based on the actual motivations of individual officers," and has held that "subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Arkansas v. Sullivan*, 532 U.S. 769, 771-72 (2001) (quoting *Whren v. United States*, 517 U.S. 806, 813 (1996)) (brackets omitted).  As long as a police officer has a valid basis to make an arrest, it will not be made invalid because it was a pretext to search for evidence of another crime.  *Id.* (citing *Whren,* 517 U.S. at 812-13).

Because the Supreme Court has foreclosed the argument that pretextual stops or arrests are invalid, counsel was not ineffective for failing to challenge the legality of Petitioner's arrest on that basis.  *See, e.g.*, *United States v. Hernandez*, 24 F. App'x 560, 563 (7th Cir. 2001); *see also United States v. Terrell*, 483 F. App'x 161, 163 (6th Cir. 2012) (quoting *Whren*, 517 U.S. at 813) ("case law forecloses 'any argument that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved").  Petitioner is not entitled to relief on his second claim.

### B.  Petitioner's custodial statement claim (Claim III)

Petitioner next contends that the trial court should have suppressed the inculpatory statement he made to police following his arrest because he had previously invoked his right to counsel prior to being in custody.  The Michigan Court of Appeals rejected the claim for the following reasons:

> Viewing the totality of the circumstances, defendant was not in custody when he told Cox that he wished to speak with an attorney before talking to the police. Defendant was not under arrest or in any way constrained by authorities when he spoke with Cox over the phone. Defendant was free to end the conversation whenever he pleased. Indeed, defendant did so multiple times. And not only did defendant repeatedly end his conversations with Cox, but defendant made the initial contact with Cox, and then continued to reinitiate contact with Cox until defendant decided he wanted to speak to an attorney. On these facts, we conclude that, at the time that defendant told Cox that he wanted to speak with an attorney, defendant was not subject to an inherently coercive environment, and a reasonable person in defendant's position would believe that he or she was free to leave. In short, defendant was not in custody when he told Cox that he

wished to speak with an attorney. And because defendant was not in custody when he told Cox that he wished to speak to an attorney, his rights under *Edwards* were not violated, and the trial court did not otherwise err by admitting defendant's confession at trial.

*Robinson*, 2018 WL 6579355, at *3. This decision also was neither contrary to nor an unreasonable application of existing federal law, nor was it based on an unreasonable determination of the facts.

When an accused invokes his right to counsel during custodial interrogation, that interrogation must cease until counsel is made available, unless the accused initiates further conversation with the police. *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981). The rule in *Edwards* is considered "a corollary to *Miranda's* admonition that 'if the individual states that he wants an attorney, the interrogation must cease until an attorney is present.'" *Arizona v. Roberson*, 486 U.S. 675, 680 (1988) (quoting *Miranda v. Arizona,* 384 U.S. 436, 474 (1966)) (brackets omitted). "The rationale of *Edwards* is that once a suspect indicates that 'he is not capable of undergoing custodial questioning without advice of counsel,' any subsequent waiver that has come at the authorities' behest, and not at the suspect's own instigation, is itself the product of the inherently compelling pressures and not the purely voluntary choice of the suspect.'" *Maryland v. Shatzer*, 559 U.S. 98, 104-105 (2010) (quoting *Roberson*, 486 U.S. at 681) (brackets and additional internal quotation marks omitted). However, "[i]n every case involving *Edwards*, the

courts must determine whether the suspect was in custody when he requested

counsel and when he later made the statements he seeks to suppress." *Id.* at 111.

Numerous courts have held that the rules established in *Miranda* and

*Edwards* are applicable only if a person is subject to an interrogation while in

police custody. *See, e.g.*, *Burket v. Angelone*, 208 F.3d 172, 197 (4th Cir. 2000)

(explaining that the petitioner "could not invoke the protections provided by

*Miranda*," including the right to counsel, "because he was not 'in custody' at the

time he stated 'I think I need a lawyer'"); *United States v. Wyatt*, 179 F.3d 532,

538 (7th Cir. 1999) ("The Fifth Amendment right to counsel safeguarded by

*Miranda* cannot be invoked when a suspect is not in custody, even if in

anticipation of future custodial interrogation."); *United States v. Bautista*, 145 F.3d

1140, 1147 (10th Cir. 1998) ("[I]n order to implicate the *Miranda-Edwards* right to

counsel prophylaxis, both a custodial situation and official interrogation are

required."); *Alston v. Redman,* 34 F.3d 1237, 1244 (3rd Cir. 1994) ("*Miranda* is

not implicated" absent "both a custodial setting and official interrogation"); *Tukes*

*v. Dugger*, 911 F.2d 508, 515 (11th Cir. 1990) ("Where the prisoner is not in

custody, the *Edward*s and *Roberson* concerns are not triggered because the non-

custodial defendant is free to refuse to answer police questions, free to leave the

police station and go home, and free to seek out and consult a lawyer"); *United*

*States v. Martin,* 95 F. App'x 169, 178, n. 8 (6th Cir. 2004) ("Martin's claim may

also fail for the additional independent reason that since Martin was not in custody for purposes of *Miranda* when he made his initial phone call to his attorney, *Edwards* does not apply."); *see also United States v. Warner*, 917 F.2d 1189, 1201 (6th Cir. 1992) ("This court has repeatedly held that a person is not entitled to be notified of her *Miranda* rights before an interrogation if that person is not "in custody."). These holdings appear to be consistent with Supreme Court jurisprudence.

In *Montejo v. Louisiana*, 556 U.S. 778 (2009), the Supreme Court overruled its previous decision in *Michigan v. Jackson*, 475 U.S. 625 (1986), which prohibited police from initiating an interrogation of a criminal defendant once the defendant invoked his or her Sixth Amendment right to counsel at an arraignment or similar proceeding. In *Montejo,* the Supreme Court noted that:

> the *Miranda-Edwards* regime is narrower than *Jackson* in one respect: The former applies only in the context of custodial interrogation. If the defendant is not in custody then those decisions do not apply; nor do they govern other, noninterrogative types of interactions between the defendant and the State (like pretrial lineups). However, those uncovered situations are the least likely to pose a risk of coerced waivers. When a defendant is not in custody, he is in control, and need only shut his door or walk away to avoid police badgering.

*Id.* at 795. The Court further observed that it had "never held that a person can invoke his *Miranda* rights anticipatorily, in a context other than 'custodial interrogation[.]'" *Id.* at 797 (quoting *McNeil v. Wisconsin*, 501 U.S. 171, 182, n. 3

16

(1991)).  Further, as the Supreme Court stated in *McNeil*, the rule in *Edwards* "relates only to custodial interrogation."  501 U.S. at 178.

For these reasons, Petitioner is unable to show that the Michigan Court of Appeals' rejection of his *Edwards* claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Harrington*, 562 U.S. at 103.  Indeed, the extension of *Miranda* and *Edwards* "outside of the context of custodial interrogation, would diminish the 'bright-line' nature of the Supreme Court's *Miranda* jurisprudence, often cited by the Court as one of the qualities of that body of law."  *Alston v. Redman*, 34 F.3d 1237, 1249 n. 11 (3d Cir. 1994) (holding that statements made by the defendant were not inadmissible because made after invoking right to counsel, where the invocation was made "not within the context of custodial interrogation").  Petitioner is not entitled to relief on his third claim.

## IV.  Conclusion

For the reasons stated, the Court is denying Petitioner's application for the writ of habeas corpus.  If Petitioner seeks to appeal this decision, he must first obtain a certificate of appealability ("COA").  28 U.S.C. § 2253(c)(1).  This Court, however, is denying Petitioner a COA.

A COA may issue only where the petitioner "has made a substantial showing of the denial of a constitutional right."  *Id.* § 2253(c)(2).  To demonstrate

this denial, the applicant is required to show that reasonable jurists could debate

whether, or agree that, the petition should have been resolved in a different

manner, or that the issues presented were adequate to deserve encouragement to

proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district

court rejects a habeas petitioner's constitutional claims on the merits, the petitioner

must demonstrate that reasonable jurists would find the district court's assessment

of the constitutional claims to be debatable or wrong. *Id.* at 484.

Petitioner fails to make this showing. Nevertheless, the issues are not

frivolous. Therefore, the Court finds that an appeal could be taken in good faith

and Petitioner may proceed *in forma pauperis* on appeal. 28 U.S.C. § 1915(a)(3).

Accordingly,

**IT IS ORDERED** that Petitioner's application for a writ of habeas corpus is

**DENIED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Petitioner is **DENIED** a Certificate of

Appealability but is **GRANTED** leave to appeal *in forma pauperis*.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: December 19, 2022

18

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, December 19, 2022, by electronic and/or U.S. First Class mail.

<div style="margin-left: 50%;">

s/Aaron Flanigan
Case Manager

</div>